Drake, &c., v. Ellman, &c.

CASE 83—EQUITY—OCTOBER 12, 1882.

# Drake, &c., v. Ellman, &c.

APPEAL FROM CAMPBELL CHANCERY COURT.

Peter Constans devised to his two sons, Louis and August, all his estate, "but they are to take the same subject to all my debts and liabilities and the bequests hereafter made, all of which are to be paid out of my estate."

1. *Held*—that Louis and August are residuary devisees after the payment of the debts of the devisor, and that his creditors have a prior lien in the distribution of the proceeds of the property so devised.

2. A mortgagee whose conveyance is within the act of 1856, and operates as an assignment of all the property of the mortgagors for the benefit of their creditors, is not a purchaser in good faith, and it is immaterial whether or not he had notice of the mortgagor's insolvency and intention to prefer him.

3. The mortgagee Stitchenath did not waive his lien upon the estate of the devisor, P. Constans, for a debt due by him at his death, by accepting the mortgage from his sons to secure this debt as well as other debts due to him from the devisees.

4. The renewal by the devisees of a debt for which Geisbauer was surety for the devisor, and which the latter was compelled to pay after the devisor's death, did not operate as a waiver of the lien Geisbauer held upon the devisor's estate, together with other creditors of the devisor.

5. The deed of assignment made by the two devisees after their act of insolvency passed no equity either to the creditors of the devisor or their own. It is of no significance whatever.

PRYOR & CHAMBERS AND ROOT & WRIGHT FOR APPELLANTS DRAKE & Co.

1. It does not appear that Geisbauer paid any of the renewed notes. They are not filed.

2. The commissioner erred in giving priority to Geisbauer's claim.

3. The legal title to the real estate of the testator rested in his devisees, Louis and August Constans, and the creditors of the testator acquired no lien upon it. The devisees, before any steps had been taken by any creditor of the testator, alienated the estate devised by the mortgage to Stitchenath, and their deed of assignment for the benefit of their creditors.

4. The alienation of the estate created a lien upon it to secure *pro rata* payment of all the debts created by them and the testator. (Gen. Stat., 489, 490; Chambers v. Davis, 17 B. Mon., 532.)

· 5. The renewal of the notes to Geisbauer was a novation, and he became the creditor of L. and A. Constans, and not the devisor. (Smith v. Turner, 9 Bush, 418; Hicks v. Crawford; Bank of Commonwealth v. Ray, 7 J. J. Mar., 273.)

· 6. The clause relied upon by the creditors of P. Constans gave no lien to his creditors. The title passed at once to his devisees.

· O'HARA & BRYAN for appellees, creditors of P. Constans.

· The mortgagee Stitchenath is not entitled to participation in the proceeds of Peter Constans' estate as a creditor. He has, in lieu of his debt against the devisor, accepted the notes of his two sons and devisees, and evinced an intention not to rely upon the lien created by the will, but to look to the personal responsibility of his sons and devisees, and the mortgage given by them to him and others. It is clearly a novation. (Colcord v. Seamonds, 6 B. M., 265; Muir v. Cross, 10 *Ib.*, 283; 10 Bush, 94; 11 B. M., 122.)

· JUDGE PRYOR delivered the opinion of the court.

Peter Constans died in the county of Campbell, leaving a last will by which he devised the whole of his estate, charged with the payment of his debts and certain legacies, to his two sons, Louis and August Constans. The clause of the will is as follows: "I give and bequeath to my two sons (naming them) my entire estate that I may be possessed of or entitled to at my death, to have and to hold the same, including all real and personal property and choses in action, rights and credits, to them and their heirs and assigns forever; but they are to take the same subject to all my debts and liabilities, and the bequests hereafter made, *all of which are to be paid out of my estate.*" The devisor then proceeds to make certain bequests to his other children and kindred, to be paid out of his estate. He gives fifty dollars per month to his son Charles as long as the latter lives. His son, Louis Constans, qualified as his executor, but it seems made no inventory of the estate, or any settlement of his accounts as such. The testator, at the time of his death, was the owner of a large *brewery* in the city of Newport, of

great value, and constituted the principal part of his estate.
His two sons, the principal devisees, took charge of this
brewery, and continued to run it on their own account as
partners until they became not only involved but went into
bankruptcy.

The testator was also greatly in debt at the time of his
death, and the two sons, during the period they were in
business, paid large sums of money due by his estate.

They made an assignment of all their estate before going
into bankruptcy, but prior to the making of this assignment,
they committed an act of insolvency by executing a mort-
gage to one William Stitchenath to secure a large sum of
money for a preëxisting debt, bringing the case within the
statute against fraudulent preferences, and it was so adjudged
in the present case in the action of Jones and others against
Stitchenath and others.    Many actions were instituted by
creditors and all heard together, and out of the consolidated
causes arise the question to be determined on this appeal.

The mortgage to Stitchenath having been adjudged to
be constructively fraudulent, and the case going to the com-
missioner for settlement, the controversy arises between the
creditors of the two devisees and the creditors of the testator,
Peter Constans, as to the distribution of the assets belonging
to the two estates.

The creditors of the devisor, Peter Constans, maintain that,
by the provisions of his will, they have a lien on the estate
devised to his two sons for the payment of their debts, and
that, in the distribution of the assets claimed to belong to
Louis and August Constans, the proceeds of that portion
of the estate devised to them by their father must be applied
in that way.    The creditors of the two sons insist that the
provisions of the will create no lien upon the estate devised

Drake, &c., v. Ellman, &c.

‾in behalf of creditors, and that the provision of the will in ‑reference to the payment of debts can have no greater meaning than the words ordinarily used in wills, "*after the payment of my debts, I devise*," &c., when it has been held that ‑the devisee would take an absolute title free of any charge, ‑such as the heir could take in case of intestacy. It is evident that the language contained in the clause of the will ‑referred to was intended as something more than the mere form usually followed in writing wills. The testator not only provides that his two sons shall hold the property ‑devised *subject to the payment* of his debts, but further provides *that these debts are to be paid out of my estate*, showing ‑his purpose to create a charge in express terms. He was ‑making bequests of money also to some of his children, and his plain intention, gathered from the language used, was to ‑secure his creditors and legatees by making his estate first ‑liable to the payment of debts and legacies, and the residue ‑to his two sons. It may be that, because the devise or trust ‑is for the payment of debts generally, a purchase in good : faith from the devisee would hold the property as against ‑the creditors of the devisor, and this whether the trust ‑directs the land to be sold for the payment of debts generally or is only charged with their payment. This rule was recognized by this court in the case of Grotenkemper ‑v. Pigeon, MS. Opinion, and is the established equitable ‑doctrine on the subject. (See Story's Equity Jurisprudence, ‑vol. 2, page 408.)

But has this doctrine any application to the case before ‑us, the mortgage to Stitchenath operating as an assignment ‑only for the benefit of the creditors of the two devisees? Is such a mortgagee to be regarded as a purchaser in good ‑faith, and does he acquire a greater right to the property

devised by the testator than the parties (the devisees) who ·
mortgaged the property had?  This, it seems to us, is the
important inquiry in the case; for, if Stitchenath is a pur-
chaser for value, he has priority over the creditors of Peter ·
Constans.

That the mortgage to Stitchenath was made in contem-·
plation of insolvency, and with the design to prefer him over
the other creditors of the two devisees, is not seriously
questioned by counsel on either side; and such being the
case, it must be maintained, in order to defeat the claims
of the testator's creditors, that the mortgage to Stitchenath,
constructively fraudulent as to the creditors of Louis and
August Constans, operated not only to make Stitchenath
a purchaser for value, but all the other creditors of the devi-
sees, for the reason that the act of insolvency inured to their
benefit.  The act to prevent conveyances in contemplation
of insolvency, with the design to prefer one or more credit-
ors to the exclusion of others, is an equitable statute, and
courts of equity alone control the disposition of the debtor's ·
assets so as to produce equality in the distribution, except as ·
to those given priority by the express provision of the statute,
or as to those who have created *bona fide* liens prior to the ·
act of insolvency.  The statute makes the fraudulent pref-
erence operate as an assignment for the benefit of creditors,
and the debtor's estate is distributed as if no conveyance ·
or mortgage had been made, subject to the exceptions con-
tained in the statute.  The assignment made subsequent to ·
the act of insolvency, by reason of the mortgage, passed '
nothing, as the debtor's entire estate had already gone, by ·
operation of law, to his creditors; and even if the assign-
ment had any vitality, we are not prepared to say that the ·
mere designation of a trustee or assignee by the debtor,.

selected by him for the purpose of administering upon or distributing the debtor's assets, would occupy any better position with reference to the claims of creditors or of third parties than the debtor himself did. He could distribute the assets according to priority, and nothing more.

It is not important, however, to determine this question, as, in our opinion, the assignment did not take hold of the property, as it had already gone to creditors. It would be a singular rule of equity that would permit the creditor who was seeking a fraudulent preference, or who accepts a mortgage from the debtor that has the effect to prefer, and so designed by the debtor, who is on the verge of bankruptcy, to occupy, with reference to third parties, the attitude of an innocent purchaser, so as to defeat their equitable claims upon the estate mortgaged. Nor is it material, as has been decided by this court, that the creditor accepting the mortgage or transfer should know of the insolvency of the debtor or his purpose to prefer. If the intention exists with the debtor, and made in contemplation of insolvency, it is obnoxious to the statute, and the creditor will not be allowed to gain an advantage over others by claiming to be innocent of the intentions of his debtor.

There can be no doubt but, as between the creditors of Peter Constans and these two devisees, that the property devised was subject to the payment of their debts, and, in fact, they were the residuary devisees after the payment of debts. A part of the property mortgaged to Stitchenath, and the greater part of it, was the property devised to the two sons by the father, and the father's creditors, by reason of the provisions of his will, are entitled to priority in the distribution of the proceeds of this property over the creditors of the two sons. Therefore, we perceive no error in

giving Geisbauer, who was the surety of Peter Constans to the banks and others for a large sum of money, and had it to pay, a lien on the estate devised to reimburse him.

It is argued that as these notes were renewed by the two sons, with Geisbauer as surety, that it was such a novation as deprived the surety of this preference.

The two sons had received the entire estate. One of them was the executor, and it became necessary to renew the paper. The surety, it seems, retained the old notes, and produced them before the commissioner, asking that he be allowed a credit by reason of the payment. His intention, doubtless, was to hold on to his lien, and while there is some contrariety of proof as to how he got possession of the old notes, one of the sons saying that he had them at one time in his possession, still it cannot affect the right of the surety, as it is manifest that the renewal was with no view to surrender all claims that the surety had on the devisors' estate, and, under the circumstances of this case, with the title vested in the parties who held the property subject to the debts, it should not be held to be a waiver of the lien in the absence of an express intention to do so by the surety.

This brings up the question arising on the assignment of error made by the appellant Stitchenath.

At the time the mortgage was executed to him, and declared to be a preference under the statute, he loaned to the two sons, Louis and August, five or six thousand dollars, and the balance of the debt consisted of near ten thousand dollars that was owing him by the testator, and to secure the two sums, the whole being included in the one note, he took the mortgage on the property devised. There was no actual fraud in the transaction, and as the appellant

.acquired no benefit from the mortgage, why should he be made to suffer still more by denying him a lien on the property of the testator to the extent of the indebtedness of the latter to him at the time of his death, and which was embraced by the mortgage. It is argued that he looked to the two sons alone for his debt, and insisted that his mortgage was valid because he had no reason to believe or know that the mortgagors were unable to pay their debts at the time of its execution. This is true; but still the mortgage is held to have passed no benefits to the appellant except such as would inure to him as one of the creditors of the two devisees, and when held to be invalid and to afford no security to the appellant, and in the absence of actual fraud, he certainly has some claim to assert in a court of equity by reason of the indebtedness of the testator to him.

He might have waived his lien by looking alone to the two devisees and their estate; but here the two sons were invested with the title for the purpose, first, of paying the testator's debts. The appellant, looking to their liability, took not only their notes, but obtained by the mortgage a lien, as between himself and the two devisees, on the identical property devised for the payment of his debt. He continued to assert his lien by holding on to the property that the testator had directed should be applied to the payment of his debt. The chancellor says to him that this lien, created by the mortgage, is inoperative, and affords you no protection. If so, why is he not remanded to his lien existing by reason of the provisions of the will to the extent that the testator was indebted to him? He manifested no intention of surrendering it, because he makes it, or attempts to make it, doubly secure by taking an additional lien by mortgage on the property devised, and from

those whose duty it was to make the payment. This appellant should have been allowed to assert his claim, or to demand payment of the testator's liability out of the latter's estate, and the court erred in refusing. All the matters contained in these consolidated actions were referred to the commissioner to make settlements and report. Two reports were made, to which exceptions were filed.

It appears that after the death of the testator, Louis and August conducted the brewery as partners, and made many payments on the debts of the testator. The report of the master fails to show the assets of Peter Constans, the testator, and the assets of Louis and August Constans, and it would be difficult to make an equitable adjustment of the matters in controversy in the absence of such a report.

The master should ascertain the assets of Peter Constans; make settlements with the executor and his brother to ascertain what amount of debts they have paid for the estate, so that their liability may be fixed with reference to this estate. He should also show the assets of the firm of Louis & August Constans, that their partnership creditors may know what they are to get, and there may be individual creditors of the two. Whether such exist or not, it is proper, we think, to make a full and complete settlement, that all such matters should be reported.

There is no report as to the condition, or any settlement, of Peter Constans' estate. This should be done.

For the errors indicated, the judgment is reversed, and cause remanded for further proceedings.

The costs of this appeal in this court to be paid out of the estate.